14 P.(2d) 264

## GARVIN v. GORDON et al.

### No. 3661.

Supreme Court of New Mexico.

Sept. 7, 1932.

George W. Prichard, of Santa Fé, for appellants.

J. S. Vaught, of Albuquerque, for appellee.

SADLER, J.

The appellee sued appellants in the district court of Torrance county for a balance of $265 claimed to be due him as a commission for bringing about a sale of the latter's farm. He pleaded an express agreement to pay him as compensation for such services 5 per cent.

of the sale price of $6,000, alleged a payment of $35 on account thereof, and claimed a balance due in the amount above stated.

The trial produced only one controverted issue of fact between the parties going to the cause of action, and that as to whether payment of the commission was conditioned upon the purchaser fulfilling the contract of purchase which admittedly was entered into but never fulfilled. The appellants, who were husband and wife, affirmed with positiveness that under the agreement the commission was payable only in the event the purchasers paid a certain note, the first to mature, in the sum of $300, representing a part of the purchase price; and that the $35 so-called credit conceded by appellee in fact was a loan by them to him. The purchaser and his wife, and also another witness, the father of Mrs. Pyburn, one of the purchasers, testified to statements by appellee which, if made, amounted to admissions by him that the agreement to pay a commission was subject to the condition claimed by appellants.

It appeared that the contract of purchase was never fulfilled and that the escrow papers evidencing the transaction, except a mortgage on some Arkansas lands given appellants by the purchasers as additional security for performance of the contract, were redelivered into the hands of the respective parties about a year or a year and a half following the transaction. This mortgage at time of trial was still retained by appellants as security, so they claimed, for advancements and credit of approximately $1,500 extended by them to the purchasers while residing on the farm in question.

The appellee, on the other hand, affirmed with positiveness the existence of an agreement to pay commission, without condition attached. He directly contradicted the assertion by one of the appellants that the $35 item was a loan, declaring it to have been a payment on account of the commission claimed. He furthermore flatly denied the statements attributed to him, by certain witnesses for appellants, tending to contradict his recital at the trial of the agreement theretofore made. Thus a clear-cut issue of fact was presented for the consideration of the jury. While the appellants had the greater number of witnesses, two of them indebted to appellants, it is true, yet competent, and all presumably credible, the jury chose to accept appellee's version of the matter, and returned its verdict accordingly. Certainly we cannot say that the jury's verdict is without substantial support in the evidence. And, upon the assertion of a claim that it is without such support, our examination of the evidence must cease when we recognize in it substantial support for the verdict returned.

The next point relied upon for reversal involves the proposition that appellee's right to compensation was defeated by his failure to show himself in possession of a broker's license to engage in the real estate business at the time of the transaction sued upon. The appellee testified he had been engaged regularly in such business as an occupation for about twelve years, thus appearing to have

been subject to the license fee provided by section 81-102, Comp. 1929. The question first arose at the trial when appellee closed his case and rested. Counsel for appellants then moved for a directed verdict upon the ground that, the complaint failing to show that he was a broker, and the evidence disclosing that he was, the omission to prove that he had procured the state license was fatal to recovery.

Thereupon counsel for appellee stated to the court that his client did hold a regular state license at the time of the transaction in question, and asked leave of the court to reopen his case for the purpose of so proving. The leave requested was granted with a statement by the court that, if the proof promised were made, appellants' motion for directed verdict would be denied, and, if not made, further consideration would be given it. Appellee later actually made some effort to supply the proof for which his case was reopened. It developed, however, that his counsel was under a misapprehension as to the facts when he declared appellee the holder of a state license at the time of this transaction. Counsel subsequently so stated to the court, and explained that the only license held by his client was an occupation license from the village of Estancia; not the state license in question. Appellee's counsel then announced in open court: "Plaintiff elects not to produce any evidence as to the procurement of a state license to carry on the business of a real estate dealer," thus abandoning further effort to furnish the proof for which he had caused his case to be reopened.

The court then had thrown back upon it a consideration of the merits of appellants' motion for directed verdict into a hearing of which it immediately entered. While the argument of counsel does not appear in the record, the request of appellants' counsel for leave to amend, made promptly after a denial of the motion, suggests his confrontation in argument with the proposition that there was no allegation in his answer to support the ground relied upon in the motion. That the court's action on the motion was based in part at least on the question of pleading indicated subsequently appears in the record. And it is here urged against our consideration of the merits of this point, relied upon by appellants, that we have only a case of the lower court denying leave to file a trial amendment; that, no abuse of discretion being shown, its action will not be disturbed.

We cannot so view the matter and consider the point is properly before us. While appellee, when the matter of state license was first raised, might have relied upon the absence of appropriate allegations in the answer to support the issue, he did not choose to do so. Instead, he consented to litigate the issue, and even procured the court's leave to reopen his case for purpose of producing the proof on it which his counsel then mistakenly believed to exist. He endeavored to produce this proof, but failed on the facts. It was only after such failure that he elected not to offer any evidence of the fact for the proof of which he had caused his case to be reopened. A party may not, after consenting to litigate an issuable defense, not plead-

ed, later, and upon failing to sustain the issue through want of proof, insist that the defense was not available because not pleaded. He may not thus recall his waiver, previously made, of the absence of a pleading to support the issue.

But on the merits of this point we must hold with appellee. The apparent conflict in the decisions on the subject practically disappears when we consider the varying statutory provisions under which such decisions were rendered. Certain well-settled principles may be deduced from them. If the particular statute declares that the calling of a broker "shall not be lawful," or "shall not be pursued or done" without a license, and perhaps by the weight of authority, if it imposes a penalty for the breach thereof, thus implying a prohibition, the broker cannot recover for his services rendered while he was unlicensed. The reason is obvious. Valid contracts may not arise out of transactions forbidden by law. The illegality inhering at the inception of such contracts taints them throughout and effectually bars enforcement.

It is also well settled that, if the statute in question takes on the nature of a police regulation, is designed for the protection of the public by sifting the personnel of those permitted to engage in the particular occupation, and contains nothing to indicate that the penalty imposed for its violation is exclusive, the usual penalty for engaging in a forbidden transaction will be added, and recovery will be denied. Generally, however, the first test applied by the courts in arriving at legislative intent is an ascertainment of whether the Legislature was enacting a revenue measure or a police regulation. And the determination of this matter ordinarily controls the question of the validity and enforcement of a contract executed in disregard of the statute. If simply a revenue measure, a contract so executed will be enforced. If a police regulation, enforcement will be denied. For a discussion of the subject both in texts and in well-prepared case notes, see 4 R. C. L. 301, § 45, under topic, "Brokers"; 9 C. J. 565; 30 A. L. R. 834, and supplemented annotation in 42 A. L. R. 1226.

It requires but a cursory examination of the state licensing act here applicable, article 1 of chapter 81, Comp. 1929 (section 81-101 et seq.), to disclose that it is a revenue measure pure and simple. It imposes no test as to moral fitness of applicants as a prerequisite to issuance of license. The form of application prescribed is designed simply to elicit information on the place the proposed business is to be conducted, and data necessary to enable the county assessor to calculate the amount of the license tax to be collected. This tax is arbitrarily fixed at $10 for real estate dealers. Section 81-102, Comp. 1929. Not only does the act fail to prohibit doing business without the license. It impliedly authorizes and recognizes the right so to do by imposing a tax, double the amount otherwise collectible, for the period a broker or dealer operates without the license. Section 81-108, Comp. 1929.

In Territory v. Turner, 17 N. M. 267, 125 P. 603, 604, we recognized that the statute

does not render unlawful the mere transaction of business without a license. We said: "It is not made a misdemeanor to engage in business without having paid a license tax, but the party doing so is required to pay a double license or tax. It is, however, made a misdemeanor to refuse or neglect to take out a license, and to pay the penalty, viz., double the ordinary tax or license, within 30 days after receiving a notice from the assessor, as provided in the act. Under this act, if it is still in force, the penal offense is the failure to pay the tax within 30 days after receiving the notice from the assessor."

In Young v. Kidder, 33 N. M. 654, 275 P. 98, we construed this statute as applied to real estate dealers. There we were not required to go beyond declaring its effect upon the right to compensation of one not a broker by occupation, who engaged in a single transaction as such. Under a well-recognized exception, even in those jurisdictions which hold a disregard of the statute defeats the right to compensation, we held a recovery was proper. Now, we go further, and hold that a broker regularly engaged in the business as an occupation, at least unless the transaction is shown to have occurred at a time when its commission constitutes a misdemeanor (30 days after notice from the assessor), may recover compensation for a sale effected when he was without such license.

Finding no error, the judgment of the lower court will be affirmed, and it is so ordered.

WATSON and HUDSPETH, JJ., concur.