179 P.2d 762

**GONZALES v. SHARP & FELLOWS CONTRACTING CO. et al.**

No. 4954.

Supreme Court of New Mexico.

April 19, 1947.

Joseph L. Smith and Mechem & Hannett, all of Albuquerque, for appellants.

Gilbert & Gilbert, of Santa Fe, for appellee.

LUJAN, Justice.

This is a second appeal of this workman's compensation case. See Gonzales v. Sharp & Fellows Contracting Co., 48 N.M. 528, 153 P.2d 676. The facts, which are not controverted, are as follows:

On July 10, 1939 Cayetano L. Gonzales while working for the Sharp & Fellows Contracting Co., (hereinafter styled appellant) suffered an accidental injury arising out of and in the course of his employment. As a result of this injury he immediately became totally disabled, and so continued until the time of his death (a result of the injury) on July 8, 1943. Because of this injury the deceased, prior to his death, was awarded compensation for 550 weeks at $18 per week. Had he lived payments would have continued until February 8, 1950. He had received compensation for 207 weeks at the time of his death, and there remained 343 weeks before his weekly compensation would have ended, had he lived.

The deceased was survived by his wife (appellee herein), and four children, all under the age of 18 years; all of whom were dependent solely upon deceased for support. This proceeding was filed in the district court within one year after the death of Gonzales.

The parties agreed: "That the sole issues in this cause were whether or not the plaintiff was entitled to recover the unpaid portion of the 550 weeks' compensation which said Cayetano L. Gonzales would have been entitled to receive if he had continued to live, and what allowance, if any, should be made as attorney's fees."

The question then is whether the facts stated support the judgment.

The answer depends upon our construction of the following statutes, under which appellee claims:

"In case death of any workman who would himself have been entitled had such death not occurred, to recover from such employer on account of any such injuries under the terms hereof, claim may be filed therefor on behalf of his dependents as provided in section 8 [§ 57-917]." Sec. 57-913, N.M.Comp.1941.

"In event any injury from accident arising out of and in the course of the employment of a workman should result in and be the proximate cause of his death and he

should leave surviving him any dependents, as herein defined, entitled to compensation under the terms hereof, payment thereof may be received or claim therefor filed by such person as the court may authorize or permit, on behalf of the beneficiaries entitled thereto, and such claim shall be filed and answer made thereto and other procedure had as in cases filed by the injured workman. Provided, that no claim shall be filed or suit brought to recover such compensation unless claim therefor be filed within one [1] year after the date of such death." Sec. 57-917 N.M.Comp.1941.

It is obvious that these statutes are not ambiguous, and standing alone, support the widow's contention that she and her four children have succeeded to the statutory benefits that had theretofore been awarded to her husband.

Counsel for appellants call our attention to the fact that compensation is provided for the widow and the minor children of a workman who lost his life by accident in the course of his employment, in the following language:

" * * *.

"In case death proximately results from the injury within the period of one [1] year, compensation shall be in the amounts and to the persons as follows:

"(1) If there be no dependents, the compensation shall be limited to the funeral expenses not to exceed one hundred and fifty dollars ($150.00) and the expenses provided for medical and hospital services for deceased, together with such other sums as deceased may have paid for disability.

"(2) If there are dependents at the time of the death, the payment shall consist of not to exceed one hundred and fifty dollars ($150.00) for funeral expenses and the percentage hereinafter specified of the average weekly earnings, subject to the limitations of this act (§ 57-901—57-931), to continue for the period of three hundred (300) weeks from the date of injury of such workman; Provided that the total death compensation payable in any of the cases hereinafter mentioned, unless otherwise specified, shall not be less than ten ($10.00) dollars per week nor more than eighteen ($18.00) dollars per week.

"If there be dependents entitled thereto, such compensation shall be paid to such dependents or to the person appointed by the court to receive the same for the benefit of such dependents in such portions and in such amounts as the court, bearing in mind the necessities of the case and the best interests of such dependents and of the public may determine, to be computed on the following basis, and distributed to the following persons:

* * * * * *

"6. To the widow or widower, if there be four [4] or more children, sixty [60] per centum of earnings. * * *" Sec. 57-918 N.M.Comp.1941.

The statute from which we have last quoted has been the law of this state in substantially the same language since 1917, though re-enacted several times. It is unambiguous, and totally unconnected with the provision in Sec. 57-913 under which appellee claims.

We then have two separate laws, each unambiguous and providing for a different relief for the widow and dependent children of a deceased workman, under different circumstances.

We stated in Atlantic Oil Producing Co. v. Crile, 34 N.M. 650, 287 P. 696, 698, "If the statute is ambiguous, we shall have a case for construction. * * * We may resort to the established canons of construction. * * * We pass it now, and shall never reach it, unless appellant can introduce ambiguity and put us to interpretation."

In Wenning v. Turk, 78 Ind.App. 355, 135 N.E. 665, 666, an almost identical situation confronted the court. The question there was whether the unpaid balance of compensation to the next of kin depending upon deceased for support, had reference to the total amount that he would have received had he lived. The Indiana court held to the latter meaning. This being the only case we have found almost in point, we liberally quote therefrom, as follows:

"Section 36 of the Workmen's Compensation Act, § 8020t, 1 Burns Supp. 1921, reads as follows:

" 'When an employe receives or is entitled to compensation under this act for an injury and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support.'

"Appellants contend that the words 'unpaid balance of compensation' as used in this section must be construed to mean compensation actually due the injured employe at the date of his death, and that it does not apply to the weekly installments of compensation that would have been paid to the employe had he lived. Section 31 of the Workmen's Compensation Act * * * provides that the employe shall receive, in lieu of all other compensation on account of his injuries, a weekly compensation of 55 per cent. of his weekly wages for the period of 150 weeks for the loss of an eye.

"Appellants contend that the law only required them to pay compensation to the date of the employe's death, and that the award for compensation subsequent to his death is contrary to law.

* &ast; &ast; &ast; &ast; &ast;

"Appellees base their claim to the unpaid balance of the compensation accruing after the death of the injured employe on section 36 supra. Appellants, however, insist that the 'unpaid balance of compensation' must be construed to mean the unpaid bal-

ance due when the injured employe dies, and that it has no reference to the installments that would have become due and payable to the employe had he not died. In this connection appellants call attention to section 37 of the Compensation Act * * *, and argue that the Legislature certainly did not intend that the 'next of kin' of an employe, who dies from causes other than the injury for which compensation was being paid, should receive more than the dependents of such employe would have received if the injured employe had died from the injury itself. Said section 37 provides that:

" 'When death results from the injury within three hundred weeks, there shall be paid a weekly compensation * * * during such remaining part of three hundred weeks as compensation shall not have been paid to the deceased, on account of the injury in equal shares, to all dependents of the employee wholly dependent upon him for support at the time of the death. * * *'

"There is nothing ambiguous about section 36. There is nothing in it that calls for judicial construction. We are not at liberty to read into the statute the words 'due at the time of the death of such employe' as we would have to do in order to have it read as appellants contend. The situation presented by these two sections is anomalous, but it is a matter for legislative enactment rather than judicial interpretation. We are strongly impressed with the language used in City of Pittsburgh v. Kalchthaler, 114 Pa.St. 547, 7 A. 921, quoted in Kunkalman v. Gibson, 171 Ind. 503, 510, 84 N.E. 985, 987, 86 N.E. 850, wherein it is said:

" 'We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the lawmaking power. It is a practice to be avoided. It has been condemned by many text-writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never to be trodden, except upon considerations of the most convincing character and the gravest moment.' "

The only substantial difference between the Indiana statutes and those considered here is that the succession statute of Indiana runs to the heirs at law instead of the dependents. Here the succession statute and the compensation statute both run to the dependents. Ordinarily they are the same persons.

We have said more than once that when the language of a statute is plain and unambiguous there is no occasion to resort to the rules of statutory construction, and that such statute must be given its plain and obvious meaning. Vukovich v. St. Louis, Rocky Mountain & Pacific Co., 40 N.M. 374, 60 P.2d 356; DeGraftenreid v. Strong, 28 N.M. 91, 206 P. 694; Harrison v. Harrison, 21 N.M. 372, 155 P. 356; L.R. A.1916E, 854; Atlantic Oil Producing Co. v. Crile, 34 N.M. 650, 287 P. 696.

It is sought here, not to construe the statute under which appellee claims her right, but to totally eliminate it from the laws of the state. It is in no wise connected with Sec. 57-918 quoted above. They have no reference to each other. One of the statutes gives the dependents a cause of action in which the workman never had an interest. They are allowed specific weekly amounts depending on the number of children or other dependents. The other statute (the one under which appellee claims) provides for the succession of property rights of a deceased person to his dependents, which prior to his death had been awarded to him personally, either by the court or by the acts of the parties, and would ordinarily lapse at his death. We see no reason why the dependents should not be allowed this money that belonged to the workman.

We have no doubt but that the legislature intended to do exactly what it did do in passing these two statutes. Whether the widow and children could obtain benefits under both statutes is not a question in this case and need not be decided; but the legislature may have so intended notwithstanding the larger compensation that would have resulted had Gonzales died within a year after his injury. However, that is a legislative matter, and is foreclosed here by the statutes, which are clear, specific and unambiguous.

We have often held that the Workmen's Compensation Laws should be liberally construed (Stevenson v. Lee Moor Const. Co., 45 N.M. 354, 115 P.2d 342) but whether liberally construed or not the result in this case would not be different. We are not authorized judicially to eliminate rights conferred by the legislature.

We are of the opinion, and so hold, that the right to receive payments under the award of July 10, 1939, did not terminate by virtue of Sec. 57-918 on July 10, 1943, with the death of Cayetano L. Gonzales, and has not yet terminated, but survives for the benefit of his dependents under the provisions of Sec. 57-913.

For the reasons herein stated, the judgment of the trial court will be affirmed, with directions to the district court to enter judgment against appellant and its supersedeas sureties. Appellee is allowed

$750.00 attorneys fees for the prosecution of her appeal in this court, and

It is so ordered.

BRICE, C. J., and McGHEE and COMPTON, JJ., concur.

SADLER, Justice (dissenting).

I dissent.

Shortly prior to his recent death the late Chief Justice BICKLEY had prepared what he proposed should be the majority opinion in this case. It represents such a clear and logical exposition of the proper construction of the statutes involved, thereby demonstrating the error into which the majority have fallen in the prevailing opinion, that it is presented herewith as the basis of my dissent, with the addition of any personal observations it shall be my choice to make at the conclusion thereof. Omitting only the preamble in which the issue determined by the trial court was stated, the able observations and discussion of the late Chief Justice BICKLEY are as follows:

"The Court resolved the issue in favor of the plaintiff and rendered judgment in her favor. Whether or not this decision is correct depends upon a proper construction of the provisions of 1941 Comp., §§ 57-913, 57-917 and 57-918. The pertinent portions of these sections are as follows:

" 'Sec. 57-913. * * * In case death of any workman who would himself have been entitled had such death not occurred, to recover from such employer on account of any such injuries under the terms hereof, claim may be filed therefor on behalf of his dependents as provided in section 8(57-917) hereof.'

" 'Sec. 57-917. * * * In event any injury from accident arising out of and in the course of the employment of a workman should result in and be the proximate cause of his death and he should leave surviving him any dependents, as herein defined, entitled to compensation under the terms hereof, payment thereof may be received or claim therefor filed by such person as the court may authorize or permit, on behalf of the beneficiaries entitled thereto, and such claim shall be filed and answer made thereto and other procedure had as in cases filed by the injured workman. Provided, that no claim shall be filed or suit brought to recover such compensation unless claim therefor be filed within one [1] year after the date of such death.'

" 'Sec. 57-918. * * * In case death proximately results from the injury within the period of one [1] year, compensation shall be in the amounts and to the persons as follows: * * *.'

"Counsel for appellee assert that the fixed 'death benefit' of 300 weeks provided by section 57-918 is a right of the depend-

ents which comes into existence only upon the death of the workman and which never belonged to the workman himself, and invoke language in our original opinion in Gonzales v. Sharp & Fellows Contracting Company, supra [48 N.M. 528, 153 P.2d 681] that: '* * * the beneficiaries of a death claim are new parties asserting a cause of action separate and distinct from that obtaining in favor of the workman for loss of time from injuries during his lifetime.' We reaffirm that statement. 71 C.J. Workmen's Compensation Acts, Sec. 270, discussing 'Death Benefits', says: 'The right to compensation rests on the obligation of the employer imposed by statute to pay the beneficiaries named therein, and implied in the contract of employment, and exists independently of rights or benefits in favor of the injured employee, but such right is subject to the conditions, and limitations contained in the statute.'

"We think where the trial court fell into error, was in supposing that the right of the dependents of the deceased workman who died as a result of the injury to him *arises* out of the provisions of section 57-918 alone. So assuming, as do counsel for appellee, they argue that the quoted provisions of section 57-913 must refer to some other cause of action which may be asserted by the dependents of the injured and deceased workman separate and distinct from 'death benefits'. The argument is faulty and is based upon a false premise.

"As we view the matter, the right or cause of action in the dependents to recover death benefits is not created solely by the provisions of Section 57-918, if at all. We think this right to recover death benefits is created by the quoted provisions of Section 57-913 and 57-917 and that Section 57-918 merely defines *the amount* the dependents shall receive, if entitled to recover them, and contains words of restriction and limitations upon a right theretofore in the statute created. We think the language in Section 57-913: 'In case death of any workman who would himself have been entitled had such death not occurred, to recover from such employer on account of any such injuries under the terms hereof, claim may be filed therefor on behalf of his dependents as provided in section 8 (57-917) hereof.' was quite appropriate for the purpose of creating in the dependents a right to recover death benefits under the conditions further described in sections 57-917 and 57-918.

"Close examination of the quoted provisions of Sec. 57-913 brings us to the conclusion that it in itself is a death statute. The first clause 'in case [of] death of any workman' does not expressly embrace the element that the injury must be the cause of the death, but it says later on in the same sentence: 'Claim may be filed *therefor* on behalf of his dependents'. (Emphasis supplied.) We think 'therefor' means for the loss to the dependents aris-

ing from the death resulting from the injury. (As provided in Sec. 8(57-917).)

"The authors of the 1941 Statutes Annotated attach to Section 57-917 a significant cross-reference, as follows:

"'Action for Death by Wrongful Act, Secs. 24-101–24-103.' Section 24-101 is as follows:

"'Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, although such death shall have been caused under such circumstances as amount in law to a felony, and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.'

"The foregoing statute and the portions of Section 57-913 heretofore quoted are not essentially different from the provisions of 'Lord Campbell's Act' passed in 1846, the provisions of which may be found in Tiffany's 'Death by Wrongful Act', 2d Ed., Sec. 21, and which for convenience of comparison, we quote a portion thereof: '(1) That whensover the death of a person shall be caused by wrongful act, neglect, or default, such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured;'

"We have indulged these comparisons because our examination of these various statutes has convinced us that the quoted language of Section 57-913 created or helped to create a cause of action of the same general nature as our Death by Wrongful Act Statute and Lord Campbell's Act, and we may consequently avail ourselves of the conclusions of the courts and text writers as to the nature of the cause of action created thereby.

"The article in 16 Am.Jur. 'Death', after saying in section 49 that 'Lord Campbell's Act was followed in the United States and in Canada by statutes modelled after it, and having in view the same general purpose as the English Act' goes on in Section 60 to discuss the nature and purpose of the Act, and in Section 61 to discuss the question as to whether what is accomplished is 'Survival or new cause of action'. The two theories are thus stated:

"'Survival Theory.—There is authority to the effect that the statutes giving a right of action for wrongful death create no new cause of action, but simply continue or transmit the right to sue which the de-

ceased had until his death; that the effect of the statutes is to pick up the abated right of the decedent and permit it to be prosecuted by the personal representative for the benefit of the designated beneficiaries. This view sometimes seems to be based upon the provision commonly found in wrongful death statutes which allows a right of action only if the deceased could have maintained an action for the same wrongful act if death had not ensued.

"'New Cause of Action Theory.—The view which is believed to be based upon the better reasoning that wrongful death statutes are not "survival statutes", but create a new cause of action, is the one supported by the courts generally and by the later trend of authority in particular. Under this view, the cause of action is not for the injury to the decedent, but is for the loss sustained by the beneficiaries because of the death and is distinct from any cause of action that the deceased might have had if he had survived. Various provisions of the statutes help to reach this conclusion, particularly provisions under which the damages recoverable consist of compensation for the losses of the beneficiaries, and do not include loss to the deceased or his estate, and under which damages recovered do not become assets of the estate, but are to be distributed to the beneficiaries.'

"From an examination of some of the cited cases, and from our previous examination of the subject as indicated in our former opinion, from which we have herein quoted, we conclude that the 'New Cause of Action Theory' is based upon the better reasoning and is abundantly supported in the adjudicated cases, and we now adopt it, if indeed, we have not heretofore done so, in our former opinion.

"It will thus be seen that counsel for appellee are mistaken in asserting that the language quoted from section 57-913 is 'a completely useless, meaningless provision' unless it serves to simply continue or transmit the right to sue which the deceased had until his death. On the contrary, it is useful and appropriate to create a new cause of action in the dependents for the recovery of 'death benefits'.

"The same argument applies to the provisions of Section 57-917. They are useful and important as creating or aiding in the creation of a new cause of action in dependents. In fact, the provisions of Sections 57-913, 57-917 and 57-918 dovetail together in creating this new right and placing limitations thereon.

"The Legislature perhaps could, if it so desired, enact a law continuing and transmitting to the dependents of the workman a cause of action which he had while living, but they have not done so.

"We are not here concerned with the instances where the workman is injured and lives several years and dies from causes *other* than the injury received.

"Several state legislatures have taken care of that situation. By way of illustration, we point to a statute of our neighboring state of Colorado. The 1935 Colorado Statutes Annotated, Vol. 3 at page 1346, c. 97, Sec. 343, contains the following:

" 'When death not proximate result—Benefits to persons wholly dependent.—If death occurs to an injured employee, other than as a proximate result of accident before disability indemnity ceased, and the deceased leaves a person or persons wholly dependent upon him for support, death benefits shall be as follows:

" '(a) Where the accident proximately caused permanent total disability, the death benefit shall consist of the unpaid and unaccrued portion of the permanent total disability benefit which the employee would have received had he lived until he had received the sum of four thousand three hundred seventy-five dollars ($4,375.00).

" '(b) Where the accident proximately caused permanent partial disability, the death benefit shall consist of the unpaid and unaccrued portion of the permanent partial disability benefit which the employee would have received had he lived.'

"A contemplation of the provisions of this Colorado statute shows what our statute is not.

"The reason, doubtless, why the provisions of the Colorado statute just quoted are limited to death arising from causes other than injury, is because the dependents would have a claim for death benefits under other sections of the statute if the injury caused the death. See Sienko v. Bopp & Morgenstern, 248 N.Y. 40, 161 N.E. 324.

"An examination of other provisions of the Colorado Workman's Compensation Act (See Sec. 342 Statutes heretofore cited), indicates that where death results from the injury, death benefits may be recovered by dependents in the maximum amount of $4,375.00 and that under the section quoted above where death occurs from causes *other* than the injury, the cause of action which the workman had is continued and transferred to his dependents, the maximum recovery, however, being limited to the amount recoverable as death benefits.

"Counsel for appellee are confronted with the difficult task of convincing us that the language quoted from Sec. 57-913, which as we have seen is at least appropriate to the creation of a new cause of action in the dependents for death benefits, *also* continues and transfers to the dependents the cause of action which the defendant had while he lived.

"Such a pronouncement by us could lead to extraordinary results. As we pointed out in our former opinion: 'Under ordinary circumstances the number of weeks thus accrued could not exceed fifty-two,

since if death occurs more than one year after injury, liability for death benefits does not exist.' Now let us suppose a case where the workman was totally and permanently disabled as a result of an injury and died as a result of such injury two weeks prior to the expiration of one year after injury, having received compensation for 50 weeks, leaving 500 weekly installments unaccrued. If our statutes quoted have accomplished the double purpose of creating a new cause of action in the dependents for death benefits and also have continued and transferred to dependents the cause of action which the workman would have had if he had lived, and these causes of action are different, separate and distinct, as the approved authorities say they are, what would prevent the dependents from asserting both causes of action on the theory of a single recovery for a double wrong, viz: injury resulting in total permanent disability and injury resulting in death? The result would be a recovery substantially equivalent to compensation for 800 weeks.

"If by construction we could say that the dependents could not assert both causes of action but must elect which of them would be pursued, the dependents would then have an election to take compensation for 300 weeks as death benefits at possibly only 40 percent of the workman's earnings, or take 500 weeks at 60 percent of the workmen's earnings. Can we suppose the legislature intended such an absurd and choiceless election? Obviously not.

"Whether the legislature could accomplish such interesting results we do not undertake to say, but we are unwilling to say they have done so by the language employed.

"Even if it were possible by construction to accomplish something similar to the Colorado system as we understand it, and have attempted to describe it, appellee would not be helped, because situations where a workman is injured and totally disabled and later dies from causes other than the injury are not within the facts of the case at bar, since it is agreed by all that the deceased workman Gonzales died as a result of the injury. No amount of liberal construction will support a view that the language of Sections 57-913, 57-917 and 57-918 created a new cause of action in dependents for death benefits and *also* continued and transmitted to dependents some sort of a cause of action which deceased would himself have had if he had lived.

"Counsel for appellee speak of the equities. These appeal to our humanitarian feelings, but do not impel us in an attempt at judicial legislation. See Vukovich v. St. Louis, Rocky Mountain & Pacific Co., 40 N.M. 374, 60 P.2d 356.

"The provisions in Section 57-918 that the cause of action for death benefits does not arise unless the death shall have occurred within the period of one year from the injury, may seem to some to be inhospitable, but that is a matter for the legis-

lature. We remark in passing that several states have enlarged this period to two years and The Congress in an Act Providing for Compensation for Injuries to Employees of the United States, 5 U.S.C.A. § 760, says that 'If death results from the injury within six years the United States shall pay,' etc. These statutes offer suggestions as to what the legislature might do, but have no bearing upon what they have done."

So wrote the late Chief Justice BICKLEY in what, because of the force of his argument and the persuasiveness with which he presented it, there was every reason to feel would be a majority opinion in this case. The arguments he advances seem unanswerable and represent my own views. One has only to contrast our statute and that involved in the Indiana case of Wenning v. Turk, 78 Ind.App. 355, 135 N.E. 665, the case relied upon by the majority, to note how widely different they are. The Indiana statute reads: "When an employee receives or is entitled to compensation under this act for an injury and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support." Sec. 36, Workmen's Compensation Act. § 8020t1, Burns Supp.1921.

The questioned statute in our own Workmen's Compensation Act provides: "In case death of any workman who would himself have been entitled had such death not occurred, to recover from such employer on account of any such injuries under the terms hereof, claim may be filed therefor on behalf of his dependents as provided in section 8 (§ 57-917) hereof." 1941 Comp., § 57-913.

Note that the Indiana statute provides for survival in the next of kin dependent on the employee for support a cause of action for payment of unpaid balance of compensation where the employee dies from *a cause other than the injury.* Our statute, § 57-913, if not alone, certainly in connection with §§ 57-917 and 57-918, creates a new cause of action in dependents for "death benefits" and by language of survival establishes it as a basis of recovery after the employee's death *where death results from the injury.*

The effect of the Indiana statutes in force when Wenning v. Turk was decided is well stated in National Power Const. Co. v. Rouleau, 81 Ind.App. 585, 144 N.E. 557, 558, as follows: "After making provisions for compensation to the injured employe, the Legislature, having in mind that such employe might die leaving dependents, made provisions for the payment of compensation or death benefits to those who were dependent upon him for support. This it did in sections 36, 37, and 38. As heretofore stated, section 36 provides, in case the employe dies from a cause other

than the injury, for payment of the unpaid balance of compensation to the next of kin dependent upon the employee for support. Under section 37, if death results from the injury within 300 weeks, the remaining part of the 300 weeks' compensation as shall not have been paid to the deceased employe shall be paid in equal shares to all of his dependents who are wholly dependent upon him for support at the time of his death. If he leaves dependents only partially dependent upon him for support, the compensation to be paid to such partial dependents is to be in the same proportion to the weekly compensation for persons wholly dependent as the average amount contributed weekly by the deceased to such partial dependents bears to the average weekly wage at the time of the injury."

The opinion in this case also explains the anomaly in the Indiana statute mentioned in Wenning v. Turk, supra, to-wit: "The statute is anomalous, in that the widow of an employee who dies from causes other than the injury may receive compensation for a longer period of time than she would if her husband had died as a result of the injury. It was this provision of the statute that we had in mind in Wenning v. Turk, 78 Ind.App. 355, 135 N.E. 665, when we said the situation presented by the two sections was a matter for legislative enactment rather than judicial determination."

Just how these statutes operated while in force is exemplified in Sanders Lumber Co. v. Watkins, 94 Ind.App. 276, 179 N.E. 919. See also, Weber Milk Co. v. Dunn, 108 Ind. App. 463, 29 N.E.2d 797, 799, on the operation of the Indiana Statute. These cases demonstrate indisputably that an altogether different section of the Indiana statute, to-wit, section 37, dealt with the rights of beneficiaries where, *as here,* death results from the injury within the specified period of 300 weeks. See National Power Const. Co. v. Rouleau, supra. And in Weber Milk Co. v. Dunn, supra, the court said: "While it is true that the Workmen's Compensation Act makes no provision for the payment of compensation for death of an injured employee which results from the accident after 300 weeks, yet it does not follow that the dependents are left without remedy in every instance. Sec. 36 of the Act above quoted (Sec. 40–1401, Burns' Ind.St. 1933, Sec. 16412, Baldwin's Ind. Statutes 1934) was intended to provide compensation for any loss or impairment suffered by such injured workman during a 300-week period. *This right to compensation if not exercised by the injured employee may be exercised by his dependents."* (Emphasis mine.)

In Fort Branch Mining Co. v. Parley, 76 Ind.App. 37, 130 N.E. 132, 133, 131 N.E. 228, the Indiana Court of Appeals recognized that *death of the workman from the injury* within the maximum period of com-

pensation would bring to an end the actual compensation period for total disability. Of course, if death should occur within the period of 300 weeks, a right to the uncollected portion of the 300 weeks was to be paid in equal shares to all of the workman's dependents wholly dependent upon him for support at the time of his death. This right, however, arose not on the language of section 36 concerned with payment of uncollected compensation where death was occasioned by a cause other than the injury but from the language of section 37 instead where death has resulted from the injury. The court said: "The maximum compensation period for total disability is fixed definitely by the law; but the actual compensation period for total disability may terminate at any time before the maximum limit has been reached—depending upon the condition of the injured workman. His complete or partial recovery, *or his death* [our italics] within the maximum period, would bring to an end the actual compensation period for total disability."

For other cases throwing some light on the question at issue see Bassett v. Stratford Lumber Co., 105 Conn. 297, 135 A. 574, and La Chapelle v. Union Pacific Coal Co., 29 Wyo. 449, 214 P. 587. Many cases may be found in extensive annotations of the subject "Survival of right to compensation under Workmen's Compensation Act upon the death of the person entitled to the award" in 15 A.L.R. 821, supplemented in 24 A.L.R. 441; 29 A.L.R. 1426; 51 A.L.R. 1446; 87 A.L.R. 864 and 95 A.L.R. 254. In the first annotation of the subject, 15 A.L.R. 821, the author states the well established rule as follows: "The question under annotation is, of course, one as to the construction and effect of the various statutes relating to workmen's compensation, and depends upon the provisions of the particular statute. It may be said in general, however, that under the statutes of the majority of the states in which the courts have considered the question, the right to compensation not yet accrued, to which a dependent or beneficiary would become entitled, is terminated by his death, and does not pass to his personal representatives or heirs."

Other decisions from sister states the opinions in which are illuminating and are persuasive of the correctness of the conclusion reached by me in the case at bar are C. & G. Potts & Co. v. Fortney, Ind. App., 69 N.E.2d 752; Black Gold Petroleum Co. v. Hirshfield, 182 Okl. 634, 79 P.2d 566; Sorensen v. Six Companies, 53 Ariz. 83, 85 P.2d 980; Harrison v. Tierney, 276 Ky. 637, 124 S.W.2d 757; Turner v. Shropshire, 285 Ky. 256, 147 S.W.2d 388; Lawrence v. Natural Gas Pipe-Line Co., 152 Kan. 558, 106 P.2d 685; Hogsten v. Compensation Commissioner, 124 W.Va. 153, 19 S.E.2d 439; State v. Industrial Commission, 141 Ohio St. 174, 47 N.E.2d 217. Feeling, as I do, that the provisions of 1941

Comp., § 57–913, were never designed to work survivorship of a claim such as that here made, the Kentucky cases of Harrison v. Tierney Mining Co., supra, and Turner v. Shropshire, supra, impress me as on all fours with the case at bar and deny recovery to the plaintiff.

Even if we had the Indiana statute construed in Wenning v. Turk, supra, as we do not, it would in no wise aid the plaintiff as is made abundantly clear by the opinions in the cases of Hogsten v. Compensation Commissioner (W.Va.) supra, and State v. Industrial Commission, (Ohio) supra [141 Ohio St. 174, 47 N.E.2d 219]. In the last mentioned case the court said:

"To restate for clarity and emphasis, the commission may at its discretion pay the dependents the unpaid balance of an award previously made to the workman in his lifetime or it may award and pay to the dependents what the injured workman would have been entitled to receive during his lifetime.

"However, nothing may be paid under the quoted part of this section unless the workman died from a cause other than the compensable injury. It is at this point that relator's case fails."

Let us consider a result, not improbable, under the construction announced by the majority. If the injury suffered by Cayetano L. Gonzales, the workman, had caused his death ten weeks later and after having been adjudged totally, permanently disabled thereby and after receiving an award therefor of $18.00 per week for 550 weeks, his dependents would be entitled to 540 weeks, as the compensation he would have received, had he continued to live in the same state of disability, plus death benefits of 300 weeks being a total of 840 weeks, the aggregate of 16-1/3 years, during which compensation would be payable in the total sum of fifteen thousand two hundred ninety-four ($15,294.23) and 24/100 dollars. Not too great an award, admittedly, for the loss of a life. But contrast it with the death benefit of 300 weeks at $18.00 per week, or $5,400.00, the admitted award had the dependents suffered the still greater loss of the breadwinner through instant death from the injury. Then ask ourselves whether the legislature ever intended so absurd and incongruous a result. Obviously not.

Employing as a precedent, the decision of an Appellate Court of Indiana (Wenning v. Turk) construing a local statute creating a right of survivorship in named beneficiaries for unpaid and unaccrued installments of compensation on account of a compensable injury, *where death is from another cause than the injury* (there being no similar statute in New Mexico) the majority apply it by analogy to a claim of survivorship as to unaccrued installments of compensation for a compensable injury *where death results from the injury.* Thus

they give no significance whatever to the fact, obviously noticed and provided for in the Indiana statute, that death in the latter instance within a specified time *always* is compensable, and in the former instance is *never* compensable. The failure to see and give proper weight to this significant fact, furnishing the rationale of the distinction made, has lead the majority into a construction as foreign to true legislative intent, in my humble opinion, as has ever been indulged by any court.

For the reasons given, I dissent.