[No. 13422.   Department One. — May 31, 1890.]

JOHN F. UHLHORN, APPELLANT, *v.* GEORGE E. GOODMAN, EXECUTOR, ETC., RESPONDENT.

VENDOR AND PURCHASER — EXCLUSIVE PRIVILEGE OF SALE — SALE AT ADVANCED PRICE — SEPARATE CONTRACT — PRIVITY — ACTION BY PURCHASER. — When one who has an exclusive privilege to sell the lands of another at a fixed price finds a purchaser at an advanced price, and contracts in his own name as grantee of the owner to sell the lands to such purchaser, and afterward obtains an agreement from the owner to deed the lands to him or order upon specified terms, the contracts must be considered as separate, and the purchaser has no privity of contract with the original owner of the lands which will entitle him to sue such owner for breach of his contract to convey, unless he obtains from the one with whom he contracted an order for a conveyance of the lands or an assignment of his interest in the contract with such owner.

ID. — AGENCY — ACTION BY PRINCIPAL — NONSUIT. — When the interest of such purchaser at an advanced price has been assigned, one who claims to be a principal for whom such purchaser and his assignee acted as agents, though he may offer evidence tending to prove such agency, is

properly nonsuited in an action for damages for breach of the contract of the original owner to convey, if he fails to prove an order for a conveyance of the lands, or an assignment of an interest in the contract sued upon.

ID. — CONSTRUCTION OF CONTRACTS — SEPARATE AGREEMENTS. — The rule that several contracts between the same parties in relation to the same subject-matter, and made as parts of the same transaction, are to be construed together, does not apply to several contracts of sale between different parties, made at different times, and upon different terms and conditions; and though one of such several contracts may refer to another for a description of the premises sold, they must be regarded as separate contracts, and not as constituting one agreement.

COMPETENCY OF WITNESS — CLAIM AGAINST ESTATE OF DECEDENT — AGENCY — COMMISSION — INTEREST IN SUIT. — A witness who acknowledges that he has an interest in a claim in suit against the estate of a decedent, to the extent of a certain commission expected for his services as an agent of plaintiff, and who has acknowledged in writing that he is jointly interested with plaintiff in the contract sued upon, is disqualified from testifying to facts occurring before the death of the decedent.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial.

The facts are stated in the opinion.

*King & Saufley*, and *Henry Hogan*, for Appellant.

*F. E. Johnston*, and *A. G. Booth*, for Respondent.

GIBSON, C. — This is an action for damages for breach of contract.

July 9, 1887, and prior thereto, the decedent was the owner of twelve thousand eight hundred acres of land in Fresno County. On the date mentioned he gave to P. Rothermal a writing (exhibit A), by which he was to have the sole privilege, for a certain time, of selling the land referred to, upon certain terms. The material part of the writing is as follows: —

"SAN FRANCISCO, July 9, 1887.

"I hereby give P. Rothermal the sole privilege, for thirty days from date, to sell my lands in Fresno County, for three dollars per acre. Terms, cash or half cash; balance on mortgage, at seven per cent interest. . . . .

"JAS. H. GOODMAN."

July 30, 1887, Rothermal contracted to sell the same land to H. V. Burner or order for the sum of forty-four thousand eight hundred dollars, payable in the following manner: Two thousand dollars were to be deposited by Burner in the First National Bank of San Francisco, there to remain until September 1, 1887, when Burner was to pay the same to Rothermal, through the bank, together with the further sum of thirteen thousand dollars, and upon such payment being made, the latter was to execute a deed conveying a perfect title to "said Burner or his order," and the latter was in return to execute a mortgage on the same land in favor of Rothermal to secure the remaining twenty-nine thousand dollars of the purchase price, which was to be paid, one half in one year, and the other half in two years, from September 1, 1887, with interest on such deferred payments at seven per cent per annum. But in the event of Burner's failure to make the payment of the fifteen thousand dollars as stipulated, then he was to forfeit the two thousand dollars on deposit to Rothermal. This agreement to sell was signed "P. Rothermal, grantee of James H. Goodman." Burner signified his assent to the terms of the agreement, and compliance with the requirement as to the deposit of the sum of two thousand dollars, by writing and signing the following on the same paper:—

"SAN FRANCISCO, August 1, 1887.

"I have this day deposited the above two thousand ($2,000) dollars in the First National Bank of San Francisco, California, with the foregoing contract and receipt, and I hereby concur in and agree to the terms of said contract and receipt.                "H. V. BURNER."

On the next day, Goodman indorsed the following on the same paper:—

"SAN FRANCISCO, August 2, 1887.

"I will deed to P. Rothermal or order the herein-described lands, on September 1, 1887, on his paying me

the sum of fourteen thousand two hundred ($14,200) dollars, and execute to me a mortgage for twenty thousand dollars for one and two years, with interest at seven per cent per annum.          JAS. H. GOODMAN."

Thereafter, but at what time does not appear, Burner assigned his interest in the contract to J. W. Pearson, and wrote such assignment upon the contract as follows: —

"I hereby assign all my right, title, and interest in said contract to John W. Pearson.

"H. V. BURNER."

The instrument made up of the foregoing parts is marked "Exhibit B."

After Burner assigned his interest in it, it was by Rothermal and the former delivered to one Coffin for Pearson, who deposited it, together with exhibit A and a certified check for two thousand dollars, in the bank last mentioned.

Goodman, on August 29, 1887, conveyed all the lands described in exhibit B to one F. P. Hooper. July 3, 1888, Goodman died, leaving a will, which was subsequently admitted to probate, and the defendant was appointed and qualified as the executor of the same. December 20, 1888, plaintiff presented the claim in suit for $61,040 damages against Goodman's estate, to the defendant as executor, who rejected it.

Defendant's counsel at the trial, upon proof of the fact that Goodman had conveyed to Hooper as above stated, admitted that if J. H. Goodman, by a prior conveyance of the land, had placed it beyond his power to transfer the same to plaintiff, or Burner, or order, no tender of money or offer to perform the obligations of the contract signed by Rothermal to be performed upon his part was necessary.

There was testimony introduced tending in a slight degree to show that Burner and Pearson, to whom the former assigned his interest in the contract, acted as

agents for plaintiff in the matter.    At the close of plaintiff's case the court granted a nonsuit upon the grounds,—1. That no liability on the part of the deceased to plaintiff was shown; 2. That no order from Rothermal to Goodman to convey the land to any one was shown. From the judgment of nonsuit, and an order denying a new trial, this appeal is taken.

Do the instruments above set forth show any liability on the part of Goodman to plaintiff?    Plaintiff claims they do,—1. Because Goodman's indorsement on exhibit B bound him to convey to Rothermal or his order, and the previous agreement of Rothermal to sell to Burner constituted such an order from Rothermal to Goodman to convey to Burner; and 2. Because Burner and Pearson acted for him as his agents in purchasing the lands from Rothermal.

The first contention of plaintiff assumes that exhibit B is in effect but one agreement.    In support of it he cites *Ingoldsby* v. *Juan*, 12 Cal. 573, as a similar case. That case was not at all similar to this.    There the husband, instead of joining in his wife's deed in the usual manner, added at the bottom of the deed, and after the certificate of his wife's acknowledgment:—

"I have read the foregoing, and fully agree with the conveyance made by my wife.    LEWIS DEPEAUX."

Which he acknowledged before the same officer that certified to his wife's acknowledgment.    And it was held that "this was contemporaneous with and a part of the execution of the original deed."

It is a well-established rule that several contracts between the same parties in relation to the same subject-matter, and made as parts of the same transaction, are to be construed together, and is embodied in section 1642 of the Civil Code.    But in exhibit B we have several contracts, each between different parties, made at different times, and upon different terms.    The thing contracted about in each, it is true, is the same, but the

object of each contract is, however, to sell the same thing for a different price, upon different conditions.

By the terms of exhibit A, Goodman simply authorized Rothermal to find, within thirty days from the date thereof, a purchaser for his land at the price fixed therein. But the latter, assuming to be the vendee of the land, made a contract to sell it to Burner for forty-four thousand eight hundred dollars, upon different terms and within a period beyond the limit provided for in exhibit A. To place Rothermal, who had exceeded his authority, in a position to execute his contract with Burner, Goodman made and signed the memorandum of August 2d, whereby he agreed to sell the same land to Rothermal, or order, on September 1, 1887, for thirty-four thousand two hundred dollars, or ten thousand six hundred dollars less than Rothermal had agreed to sell the same land for to Burner. This last agreement of Goodman's superseded exhibit A, and apparently changed the attitude of Rothermal from that of an agent to sell under said exhibit to that of a vendee of the land. Rothermal's contract with Burner and Goodman's contract with Rothermal, although written upon the same paper, were as separate and distinct as if written upon separate pieces of paper, and without any knowledge on the part of Goodman of Rothermal's contract with Burner; each is separate and complete in itself, and needs no reference to the other, except that of Goodman's refers, for a mere description of the land, to Rothermal's contract with Burner.

Goodman, at the time he wrote his agreement to sell to Rothermal, had the latter's agreement with Burner before him, which disclosed to him that Rothermal was to receive ten thousand six hundred dollars more from Burner than he (Goodman) was to get from Rothermal. Goodman was apparently satisfied with the arrangement, and willing that Rothermal should make as much as he could over and above the sum the latter had agreed to

pay to Goodman. There was no other mode, as far as the record goes, provided for to compensate Rothermal for taking the land and disposing of it.

Suppose Goodman had construed exhibit B to mean that Burner was the assignee of Rothermal's interest in the latter's contract with him, and, upon such assumption, had conveyed to Burner, for either the price the latter was to pay to Rothermal, or that he (Goodman) was to receive from Rothermal, and thereby deprive the latter of ten thousand six hundred dollars, can there be any doubt but what Rothermal could sue Goodman for a breach of their contract? If this be correct, of which we have no doubt, it is evident, then, that the two contracts were separate and independent from and of each other.

Burner's assignment to Pearson of his interest in his contract with Rothermal related to that contract alone, and cannot be extended to embrace Rothermal's interest in the latter's contract with Goodman, upon which he was to earn a profit of ten thousand six hundred dollars out of Burner or his assign; for it is obvious that a person cannot assign any interest in a contract greater than his own.

Now, it may well be, as suggested by defendant's counsel, that, for aught that appears to the contrary, Goodman, who conveyed the land to Hooper prior to the 1st of September, 1887, the date on which he agreed to convey the same to Rothermal, or his order, may have done so pursuant to an order from the latter directing that the land be conveyed to Hooper. This consideration, we think, points the necessity of requiring the plaintiff to show that he acquired a right to the land from Rothermal by an order, or by an assignment of his interest in his contract with Goodman, before he can recover damages for Goodman's failure to convey the land to him. He did not offer any evidence to meet this requirement, and consequently failed to prove any liability

on the part of decedent to him on the contract of the decedent with Rothermal. He endeavored to show, however, by the testimony of Pearson and one Brown, as to the contents of a certain letter, written by plaintiff to Pearson, about the middle of July, 1887, which had been lost, to the effect that he had authorized Pearson and Burner to buy the "Goodman land" for him at a price not exceeding four dollars per acre. The testimony of Pearson on this point was properly stricken out, because it appeared by his own testimony that he was interested in the contract forming the basis of the suit to the extent of a certain commission that he expected. And it further appeared, in like manner, that, after the time plaintiff presented his claim in suit to the defendant as executor of the will of decedent, he acknowledged in writing that he was jointly interested with plaintiff in the contract, for the breach of which damages are sought in this action.

Brown's testimony, given its utmost weight and force, at most but slightly tends to prove that Burner and Pearson acted as the agents of plaintiff in purchasing the land from Rothermal. But assuming that it does show that fact conclusively, still it does not, in the slightest degree, tend to establish that plaintiff or either of his agents obtained an order for a conveyance of the land, or an assignment of Rothermal's interest in his contract with Goodman.

Plaintiff did not make any different or additional showing upon his motion for a new trial.

We think it manifest that the court was justified in granting defendant's motion for a nonsuit, and denying plaintiff's motion for a new trial, and therefore advise that the judgment and order appealed from be affirmed.

VANCLIEF, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.