[S. F. No. 1851.  Department One.—December 17, 1901.]

## VICTOR CAUHAPE, Appellant, v. FREDERICK BARNES et al., Respondents.

TRUSTS—RESIGNATION OF TRUSTEE—SETTLEMENT OF ACCOUNTS—APPOINTMENT OF NEW TRUSTEE.—Where a trustee under a will resigned, and was relieved from his duties as trustee, the settlement of his accounts was not a condition precedent to the appointment of a new trustee.

ID.—RULES OF EQUITY AS TO APPOINTMENT OF TRUSTEE—IRREGULARITY—COLLATERAL ATTACK.—A court of equity will not allow a trust to fail for want of a trustee, and will appoint a trustee, when needed to preserve the trust. Irregularity in the proceedings of appointment not affecting the jurisdiction will not avail in collateral suits.

ID.—ACCEPTANCE OF TRUST—RESPONSIBILITY FOR CONTINUANCE.—A trustee appointed by the court who accepts the trust is concluded thereby, and must continue to perform the duties of the trust, and cannot avoid its duties and responsibilities by disclaimer or renunciation until he is discharged by the court.

ID.—ACTION AGAINST TRUSTEE TO ENFORCE DEBT AGAINST TRUST PROPERTY—ESTOPPEL OF BENEFICIARIES.—Where the beneficiaries of the trust were parties to the proceeding for the resignation of the former trustee and the appointment of the new trustee, and never questioned the validity of his acts as trustee, though well aware of such acts, and did not question his action as trustee in creating a debt which is sought to be enforced in equity against the trust estate, they are estopped from denying the validity of his appointment as trustee, as against the plaintiff, who acted upon the faith of his position as recognized trustee.

APPEAL from an order of the Superior Court of Santa Clara County denying a new trial.  W. G. Lorigan, Judge.

The facts are stated in the opinion of the court.

John H. Yoell, and Joseph R. Patton, for Appellant.

William A. Bowden, for Respondents.

VAN DYKE, J.—An action against defendant Barnes, as trustee, and the heirs and devisees under the will of Margaret Leddy, deceased, for balance due the plaintiff for cattle and meats sold and delivered to the defendant Barnes in his capacity as trustee under the said will, and to have the sum found due by the court declared a lien upon the real property belonging to said heirs and devisees, there being no personal property belonging to said trust estate to satisfy said plaintiff's claim.

Margaret Leddy died in 1884, leaving a number of children, defendants here, and three other children, who died unmarried and without issue, and considerable of an estate. Her property consisted, among other things, of an old and established butchering business, and, with a view to its conduct and maintenance after her death, she provided in her will, after bequeathing one twenty-second of her estate to Clarence Leddy, a minor son, that all the rest of her estate was given, devised, and bequeathed to James Leddy and Samuel Leddy, in trust for the following uses and purposes: "To carry on the butchering business as heretofore carried on by said testatrix, Margaret Leddy, until the youngest child, Clarence Leddy, should attain the age of fifteen years, and in the mean time to clothe, educate, and maintain said minor children, until the females should marry, during said period, and the males obtain means of support for themselves, during said period, and when the said Clarence Leddy should attain the age of fifteen years, to distribute the said real and personal property and its increase as follows: To Clarence Leddy, 1/22 part of the whole thereof, and the rest and residue thereof to each of the other children, share and share alike." The will was admitted to probate, and such butchering business was conducted and maintained, under the trust provisions of the will, by James Leddy, one of the trustees, until 1885, when he, as surviving trustee, retired as such trustee, and Frederick Asselin was, by the superior court, appointed trustee in his stead, who entered upon the discharge of his duties under such trust, the estate of Margaret Leddy, deceased, in the mean time having been distributed to him

in trust for the said purposes stated in her said will. There-
after, in 1887, in an action brought to relieve Asselin from
further duties as trustee, he having resigned as such on April
13, 1887, as shown by the minutes of said court in said cause,
the following proceedings occurred: "On the part of the
plaintiff, F. M. Asselin and F. Barnes are sworn, and no
evidence being offered on the part of defendants, and said
cause submitted to the court for consideration and decision,
and the court being fully advised, and no objection appearing
thereto, it is ordered that plaintiff's prayer be granted, and
he be relieved from the duties of trustee under the will afore-
said. And it is further ordered that said Frederick Barnes be
and he is hereby appointed such trustee, without being re-
quired to give security of any kind." It was in evidence on
the trial that defendant Barnes was present in court at the
time the order in question was made for his appointment as
trustee, and then and there consented to act as such trustee
under the will of Margaret Leddy, deceased, and from that
day down to the trial of this action continued to act as such
trustee. In his testimony he says: "I have had dealings with
the plaintiff herein in my capacity, which I suppose to be as
trustee. I was carrying on the business of the trust. It was
a butchering business. I purchased cattle and meats from the
plaintiff, and sold them at retail. I used the proceeds in the
paying of the expenses of the business and the estate. I used
the net proceeds of the sales and the business in the expenses
of the estate and the house and the clothing, feeding, and
looking after the children, and in the maintenance of the
estate, and the payment of taxes upon the lands and property
of the estate, including the lands still belonging to the Leddy
estate. I spent the money for the support of the minor
children of Margaret Leddy, as directed by the will, and spent
it wholly in carrying out the trust laid down in the will of
Margaret Leddy. I never did deal with Cauhape in an indi-
vidual capacity; I dealt with him as trustee under the will."
The amount of the balance claimed by the plaintiff to be due
is not disputed. A large portion of the goods were furnished
before January, 1895. Barnes testified: "I informed the
heirs every month of the condition of affairs. The dispute
came afterwards,"—that is, after the indebtedness accrued.
It was stipulated at the trial that the first dispute and con-

tention by the Leddy heirs, as to the validity of Barnes's appointment as trustee, was about October, 1895.

The court finds that, in the proceeding for that purpose already noted, Asselin "was then and there and thereby discharged as such trustee, and relieved of all further powers as such under the last will of Margaret Leddy, deceased," but also finds that Frederick Barnes was not appointed as trustee in place of Asselin. This last purported finding is a mere conclusion drawn by the court below from a so-called interlocutory decree in the proceeding, wherein Asselin resigned and Barnes was appointed. The defendants on the trial "offered in evidence a document purporting to be a certified copy of the lost original interlocutory decree in *Asselin* v. *Barnes.*" It is recited in this so-called interlocutory decree,—which is dated May 9, 1887, nearly a month after the minute order,— that Asselin had made his resignation in writing, and asked to be relieved from the trust, and that Frederick Barnes is in all respects a suitable and proper person to carry out said trust; it was thereupon ordered, that the resignation of said Asselin be accepted, that a day be set for hearing his final account, and that upon the settlement thereof he be released from all liability as such trustee; "that, upon the settlement of said account, and upon taking the oath, said Frederick Barnes be appointed sole trustee under the last will and testament of Margaret Leddy, deceased."

When Asselin had been "discharged and relieved of all further powers as trustee," as the minute order of April 13, 1887, declared he was, the settlement of his accounts was not a condition precedent to the appointment of another trustee in his place. The law does not require the taking of an oath by a trustee, and this requirement in the purported interlocutory decree, filed after Barnes was appointed, was mere surplusage. There was therefore no legal impediment against Barnes entering upon the duties as trustee at the date of the minute order, which, as a matter of fact, he did; and from that time he performed the duties as trustee, and his acts as such were not even questioned by any one until a short time before the trial of this cause in the court below.

According to the finding of the court, however, we have here a trust without a trustee for nine years, which is against all the rules in such cases. "Another rule of equity, which

admits of no exception, is, that the court will never allow a trust to fail for want of a trustee. Therefore, where a trust is created, but the party creating it had appointed no trustee; or the trustee by the rules of law is incapable of taking; or the appointment of trustee fails by his death, refusal, or otherwise; in all these cases the court will follow the estate into the hands of the party in whom it becomes vested at law, and will treat him as a trustee for the execution of the trust." (Hill on Trustees, *171, 273.) "A trust will not be allowed to fail for want of a trustee, and, if the nominee dies before qualifying or afterwards, the court will appoint a trustee. So, if no trustee is appointed by the grantor, or his appointment is void for uncertainty. . . . Irregularity in the proceedings of appointment not affecting the jurisdiction of the court will not avail in collateral suits." (Perry on Trusts, pars. 276, 277.)

Here the court had jurisdiction of the subject-matter of the trust and of the parties. The proceeding was instituted by the former trustee, Asselin, for the purpose of having his resignation as trustee accepted, and the defendants here— the heirs and beneficiaries under said will of Margaret Leddy, deceased,—were made parties defendant therein, and took part in the proceeding; and the order or decree of April 13, 1887, recites that said cause "was submitted to the court for consideration and decision, and the court being fully advised, no objection appearing thereto, it is ordered that plaintiff's prayer be granted, and the plaintiff relieved from the duties of trustee under the will aforesaid. And it is further ordered that said Frederick Barnes be *and he is hereby appointed such trustee,* without being required to give security of any kind." This order, or decree, was at the time—to wit, April 13, 1887—properly entered in the minutes of the court. Barnes, as already shown, then and there accepted the appointment as trustee so made, and at once entered upon his duties as such. He thereupon became, in law as well as in fact, the trustee. The property of the estate, both real and personal, was transferred and turned over to him by Asselin, the former trustee; and from that time Barnes continued to act as such trustee. "If a person has once accepted the office, either expressly or by implication, it is conclusive; and he cannot afterwards, by disclaimer or renunciation, avoid its duties

and responsibilities.'' (Perry on Trusts, sec. 268.) Again: "If a trustee once accepts the office, he cannot, by his sole action, be discharged from its duties. Having once entered upon the management of the trust, he must continue to perform its duties until he is discharged.'' (Perry on Trusts, sec. 274, citing a large number of authorities.)

The heirs and beneficiaries, who are now disputing the authority of Barnes, as already shown, were parties to the proceeding in which Asselin resigned and Barnes was appointed in his place as trustee, and from that time to October, 1895, a period of eight years and a half, they never once questioned the validity of his acts as trustee, although well aware of what he was doing as such trustee, and particularly his dealings with the plaintiff, in which the indebtedness in suit was incurred. In Bigelow on Estoppel, 5th ed., p. 560, he says: ''It is now a well-settled principle, that wherever the true owner of property, for however short a time, allows another to appear as owner of or as having full power of disposition over the property, the same being in the actual possession of the latter, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. And the rule applies equally to *cestuis que trust* who allow or encourage the trustee to appear in such light and cause innocent parties to act.'' (See, also, Herman on Estoppel, sec. 521, and authorities cited.)

The findings of the court, that Frederick Barnes was not appointed in the place or stead of Asselin, or otherwise, as trustee, and that he never entered upon and discharged his duties as trustee, and that he is not now, and never was, trustee under said last will and testament of Margaret Leddy, deceased, or otherwise, or at all; and also that said Barnes did not become indebted to the plaintiff, as trustee, under said will for cattle or meats, or anything else, sold and delivered to him, as trustee, in the sum claimed, or in any other sum, are not supported by the evidence, but are directly against the admitted and uncontested facts in the case.

The order denying plaintiff's motion for a new trial is reversed and the cause remanded.

Harrison, J., and Garoutte, J., concurred.