226 P.2d 464

HENDRICKS v. HENDRICKS.

No. 5316.

Supreme Court of New Mexico.

Dec. 28, 1950.

T. T. Sanders, Jr., S. B. Christy, IV, Roswell, for appellant.

Frazier, Quantius & Cusack, Roswell, for appellee.

SADLER, Justice.

The plaintiff (appellee and cross-appellant) sued defendant (appellant and cross-appellee) as executor of the estate of A. C. Hendricks, deceased, seeking judgment against him for the aggregate sum of sixty-five thousand ($65,000.00) dollars for moneys claimed to have been entrusted to the care and keeping of decedent on account of divers transactions, commencing more than twenty (20) years before the filing of the complaint and continuing throughout the intervening period. It was alleged the plaintiff was a younger brother of deceased, in whom he placed great confidence, personally, and as well in his business judgment, and entrusted him with the sums of money mentioned by reason of such trust and confidence. The complaint went on to say that decedent promised to keep accurate books and records of such transactions, by reason whereof the plaintiff was without detailed dates or records touching the claims asserted. The plaintiff set up in his complaint six (6) separate transactions and the amount claimed to have been received in trust by decedent as to each, aggregating the sum heretofore stated. It was for such amount that the plaintiff prayed judgment against the defendant as executor aforesaid.

The defendant by his answer interposed a general denial as well as certain affirmative defenses, one of which was the statute of limitations. Following trial the court filed its decision containing the findings of fact and conclusions of law upon which it entered judgment in the plaintiff's favor against the defendant in the sum of three thousand six hundred ninety-one and 66/100 ($3691.66) dollars. The defendant, feeling aggrieved by the judgment so rendered against him, prayed and was granted an appeal to this court for a review of such judgment. The plaintiff, likewise aggrieved as he asserted, sought and was allowed a cross-appeal from the judgment to review it for failure of the trial court to grant him judgment in greater amount than it did. So it is that we have before us a review of the whole judgment in the respects complained of by each party, upon a full and complete record of the trial and proceedings as conducted below. We first shall dispose of the claim of error presented on the appeal by defendant. Preliminary to doing so and to give an intelligent understanding of how the question raised on the appeal arose, as well as to furnish a background for disposition of the questions presented on the cross-appeal, we shall set out the findings of fact and conclusions of law found in the decision filed. They are as follows:

"Decision

"The above entitled cause having been heard by the Court, and the parties having submitted their requested findings of fact and conclusions of law and the time announced by the Court for filing said requests having now expired, the Court makes the following Decision, to-wit:

"A

"Findings of Fact as to Wage Claim

"1. That from about the middle of 1943 to the time of the death of A. C. Hendricks on January 23, 1947, the Plaintiff Ricks Young Hendricks at the special instance and request of the decedent, A. C. Hendricks, did perform work and services for the said A. C. Hendricks for the agreed stipulated price of $140 per month. That the Plaintiff did receive $40 per month of said salary; and that the remainder due, unpaid, and owing to the Plaintiff, as a debt, was the sum of $100 per month.

"2. That Plaintiff filed his claim in the Probate Court for said wages on the 12th day of February, 1948.

"3. That the Defendant has by his pleadings raised the bar of the statute of limitations as to a part of this claim. That consequently Plaintiff is entitled to recover wages at the rate of $100 per month against the Defendant for a period of 2 years, 11 months, and 20 days,

being within the period of limitations.

"Conclusions of Law as to Wage Claim

"1. The Court therefore concludes as a matter of law with reference to the above wage claim that Plaintiff is entitled to judgment against the defendant in the amount of $3566.66.

"B

"Findings of Fact as to Cattle Deal

"1. That on February 12, 1944, the decedent, A. C. Hendricks, or his agents, had possession of one head of cattle of the property of the Plaintiff, which head of cattle was shipped and disposed of by decedent, or his agents, on December 1, 1944.

"2. That on November 24, 1942, decedent, or his agents, had possession of and shipped and disposed of 2 head of cattle bearing the brand of Plaintiff.

"3. That on November 17, 1943, decedent, or his agents, had possession of and shipped and disposed of 1 head of cattle bearing the brand of Plaintiff.

"4. That on January 24, 1944, decedent, or his agents, had possession of and shipped and disposed of 3 head of cattle bearing the brand of Plaintiff.

"5. That on January 29, 1944, decedent, or his agents, had possession of and shipped and disposed of 1 head of cattle bearing the brand of Plaintiff.

"6. That on December 13, 1942, decedent, or his agents, had possession of and shipped and disposed of 1 head of cattle bearing the brand of Plaintiff.

"7. That on December 1, 1942, decedent, or his agents, had possession of and shipped and disposed of 1 head of cattle bearing the brand of Plaintiff.

"8. That on February 12, 1948, Plaintiff filed in the Probate Court his claim for the reasonable value of all of said cattle so possessed, shipped, and disposed of by Defendant, or his agents, but Defendant by his pleading has raised the bar of the Statute of Limitations against said claim for said cattle.

"Conclusions of Law as to Cattle Deal

"1. The Court concludes as a matter of law that Plaintiff's claim for said cattle was a debt and is barred by limitations, with the exception of the one head of cattle herein above set out in Finding of Fact No. 1, and as to which one head of cattle the court concludes as a matter of law that Plaintiff is entitled to recover judgment against the Defendant for the reasonable value thereof. The attorneys will stipulate as to the reasonable value of said one head of cattle and the amount so stipulated will be inserted in the judgment to be prepared.

"C

"Findings of Fact as to Claim Involving $506.09

"1. That as claimed by the Plaintiff, and as shown by the last entry recorded in the record books of the deceased, A. C. Hendricks, the said A. C. Hendricks did on the 13th day of February, 1933, owe Plaintiff the sum of $506.09, as a debt.

"2. That the Defendant has raised the bar of the Statute of Limitations against said claim, which claim was filed in the Probate Court on February 12, 1948.

"Conclusion of Law as to Claim Involving $506.09

"1. The Court concludes as a matter of law from the foregoing findings of fact that said claim for $506.09 is barred by the Statute of Limitations and Plaintiff is entitled to no recovery.

"D

"Findings of Fact as to Real Estate Transaction

"1. That on June 22, 1942, plaintiff and his wife executed a deed to The Hendricks Company, a partnership composed of A. C. Hendricks and others, for which A. C. Hendricks, now deceased, agreed to pay to the said plaintiff the sum of $2500, which was due and owing to plaintiff as a debt on said June 22, 1942.

"2. That the defendant by his pleading has raised the bar of the Statute of Limitations against said claim, which claim was filed in the Probate Court on February 12, 1948.

"Conclusion of Law as to Real Estate Transaction.

"1. The Court concludes as a matter of law that said claim is barred by the statute of limitations and plaintiff is not entitled to recover thereon.

"E

"General Conclusions of Law

1. That the plaintiff shall have judgment against the defendant in the sums hereinabove allowed, to-wit, on the wage claim, and on the cattle deal.

"2. All other claims filed herein by the plaintiff against the decedent's estate are disallowed either as trust transactions or as debts, for failure on the part of the plaintiff to meet his burden of proof in establishing any of said other claim or claims by a preponderance of the evidence, and for failure of sufficient corroboration against a decedent's estate as required by law; and plaintiff's requested findings of fact with respect to such other claims are hereby refused and denied, and no facts are found by the court warranting any other recovery than that hereinabove set out.

"In explanation, the Court states that since plaintiff's requested findings of fact on said other claims are refused and denied, it does not deem it necessary to give or make adverse or negative findings in favor of the defendant, and in any event the possible giving or making of such negative findings would be surplussage. The refusal to give plaintiff's findings of fact in and of itself forecloses plaintiff's right to recovery on the facts alleged as basis for recovery on such additional claims. Furthermore, defendant's requested findings of fact on the cattle deal and wage claim are not allowed, as well as all of defendant's other requested findings of fact are likewise refused and denied, all as is more fully set out in the Order of this Court filed simultaneously herewith."

It will be observed from a reading of finding of fact A-1, the decedent, A. C. Hendricks, promised to pay the plaintiff an agreed wage or salary of $140.00 per month for work and services performed by him from about the middle of 1943 to time of the death of decedent on January 23, 1947. And from finding A-3 of the trial court it appeared that 2 years, 11 months and 20 days of such services were performed within the period of limitations for which a recovery at the agreed wage could be had. Accordingly, the judgment against defendant was for wages for the period

mentioned at the rate of one hundred ·($100.00) dollars per month, an amount admittedly unpaid and claimed by defendant never to have been promised, amounting to $3566.66, plus the sum of $125.00 as the reasonable and stipulated value of one head of neat cattle shipped by decedent belonging to plaintiff, and the proceeds held for plaintiff's use and benefit. The total judgment rendered against defendant thus aggregates the sum of $3691.66, as hereinabove stated.

It is the contention of counsel for defendant that the record is absolutely barren of any evidence as to the amount of salary the plaintiff was to receive for the period in question except his own testimony and that of his wife. This circumstance is the basis of defendant's claim that judgment for wages over the period not barred by limitations is in direct violation of 1941 Comp. § 20-205, reading: "In a suit by ·or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence."

Agreeing, for purposes of present discussion, that there is no corroboration of plaintiff's testimony establishing the claim for salary except that of the wife, the pertinent inquiry arises whether by reason of her community interest in the husband's earnings, she is an "opposite or interested party to the suit" within the purview of the controlling statute mentioned. Counsel for · defendant argue strongly that she is and plaintiffs' counsel insist with equal vigor and earnestness that she is not. The question is presented to this court for the first time and is an intriguing one. We are disposed to the view that the wife's community interest does not bring her testimony within the prohibition of the statute.

Obviously, the wife is not a formal party to the suit. If she is to be deemed one and thereby subjected to the statutory disqualification, it must be done as a matter of construction. But we do not think the statute leaves room for construction. The ban against obtaining a judgment on a party's uncorroborated testimony is laid on "an opposite or interested party *to the suit*". The wife whose testimony corroborated that of her husband as to the salary promised is certainly not an actual "party · to the suit".

The uniform tendency of modern legislation is to remove, instead of tightening, restrictions on competency of witnesses to testify. Epes' Adm'r v. Hardaway, 135 Va. 80, 115 S.E. 712. Counsel for plaintiff remind us of such legislation

in New Mexico, as for instance, 1941 Comp. § 20-106, removing the disqualification to testify by reason of interest; § 20-108 removing common law disqualifications to give testimony; § 20-109, lifting the disqualification as to parties to suits, actions and proceedings, the closing language of which reads: "* * * and the husbands and wives of such parties and persons shall, except as hereinafter excepted, be competent to give evidence, either viva voce or by deposition, according to the practice of the court, on behalf of either or any of the parties to the said suit, action or proceeding."

It is interesting to note that section 20-106, lifting the disqualification by reason of interest and 20-109 removing the disqualification as to parties and as to the husbands and wives of such parties, except as thereinafter excepted, are a part of the same act, L.1880, c. 12. Section 20-205, so much relied upon by the defendant (appellant) herein, appears as § 8 of L.1880, c. 12; section 20-106 appears as § 2 thereof and section 20-109 as § 4 of the same act. It would thus seem, since the original act, L.1880, c. 12, expressly rendered competent as witnesses the husbands and wives of parties, "except as thereinafter excepted" and since nowhere following is either husband or wife excepted by interest from the right otherwise obtaining to corroborate testimony of the other "in a suit by or against the heirs, executors, adminis-trators or assigns of a deceased person," that the right of the wife so to do could not be successfully challenged.

The question has never been determined in this state upon a direct challenge to the right of the wife so to testify. However, in the case of Union Land & Grazing Co. v. Arce, 21 N.M. 115, 152 P. 1143, this court in a case where 1941 Comp. § 20-205, requiring corroboration, was deemed applicable considered testimony of the wife of the prevailing party proper as corroborating the testimony of her husband without even so much as questioning the competency of the witness or her testimony.

Altogether aside from the considerations mentioned as bearing on the question, as already indicated, the language of the statute itself affords the strongest evidence that the wife in the case at bar could properly give testimony corroborating that of her husband on the questioned issue. It confines the ban imposed to "an opposite or interested party *to the suit*". (Emphasis ours.)

In the state of Virginia there is a statute, near enough like our own save in one significant respect, to render its construction by that state's highest court of persuasive force. In the year 1921 it appeared as section 6209 of the Code of that state and is as follows: "In an action or suit by or against a person who, from any

cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

In the case of Ratliff v. Jewell, 153 Va. 315, 149 S.E. 409, 67 A.L.R. 1541, and note, the court construed the statute. The question was whether the wife could corroborate the testimony of her husband in support of a set-off pleaded by him in defending an action on two notes signed by himself and wife. While the court there held she was incompetent to testify because an "interested" party within the purview of the statute, the reasoning by which the court reaches such conclusion is strongly persuasive of the correctness of the conclusion we reach that our statute does not exclude the testimony of the wife. The court quotes at length from its former decision in Atlantic Coast Realty Co. v. Robertson's Ex'r, 135 Va. 247, 116 S.E. 476, opinion by Judge Prentis. It said:

"This court, speaking through Judge Prentis, made these comments; their importance justifies their restatement at length:

"'The true construction of section 6209 is difficult. So far as applicable to the facts of this case it is discussed in Robertson's Ex'r v. Atlantic Coast Realty Co., 129 Va. [494] 499, 106 S.E. 521. Supplementing that discussion, and because it is probable that the question will again arise, we have upon mature consideration reached conclusions intimated, but not emphasized, there.

"'Adjudged cases shed little light upon the question, because at last its determination depends upon the construction of the language of the Virginia statute. This precise language used in this connection does not appear in any other statute, so far as we are informed.

"'We should first rid our minds of all of the cases which discuss the character of interest which disqualifies a witness, for under the Virginia statute the interest of a witness is no longer a disqualification. The object of the statute is twofold; that is, to provide, first, that there shall be no judgment in favor of an adverse or interested party founded on his uncorroborated testimony, and, second, in case an adverse party testifies, then to admit as evidence the memoranda and declarations of the opposite party, incapable of testifying. It is significant that, in the clause of the statute which requires corroboration, the

descriptive language is "adverse or interested party," whereas in that which permits the admission as evidence of the memoranda and declarations of the person then incapable of testifying, who or whose representative is a party to the suit, the language used is "adverse party"; so that, if an adverse party—that is, a party to the record, against whom or in whose favor a judgment is sought—testifies, then such memoranda and declarations of his adversary in the litigation if relevant are admissible. On the other hand, when referring to the corroboration required, this is not limited to the adverse party, but includes both the adverse party and the interested party. This language must have been chosen designedly. If we hold that the words "adverse or interested party," whose testimony requires corroboration, are synonymous, and refer only to the parties to the suit, then the word "interested" in that connection is clearly superfluous. If, then, we are to attach any effective meaning to this word (interested), we must hold that one who has a pecuniary interest in the recovery, although not a party to the record, is a witness requiring corroboration.'

" 'In an action by a corporation against executors to enforce a stock subscription by their decedent, a large stockholder in the plaintiff corporation is necessarily an "interested" party, whose testimony must be corroborated before any judgment can be founded thereon.' Merchants' Supply Co. v. Hughes' Ex'rs, 139 Va. 212, syllabus note No. 2, 123 S.E. 355.

"In these cases the witnesses were not parties to the litigation, and no judgment could have been entered against them there. Here, if we treat the set-off as an independent action, Mrs. Jewell is not a party; but she has a direct substantial pecuniary interest in the result, unless the set-off be sustained; judgment must go against her." [153 Va. 315, 149 S.E. 411.]

It seems too obvious for question that had the Virginia statute limited its operation as respects corroboration to "adverse" parties, interpreted by the court as meaning parties to the record, the wife would have been permitted to testify because, in spite of her interest, she was not a party to the action or suit. Unquestionably had that statute mentioned, in referring to corroboration, "adverse party" only, or if it had read "adverse or interested party *to the suit*," as does ours except to substitute the word "opposite" for the word "adverse" in the Virginia statute, the wife's testimony would have been held proper. Note this language of the opinion: "On the other hand, when referring to the corroboration required, this is not limited to the adverse party, but includes both the adverse party and the interested party. *This language must have been chosen designedly.*" (Emphasis ours.)

Now our legislature did exactly what, had it been done in the Virginia statute, would have rendered the wife there eligible to testify. It confined the "interested" party intended to such as are parties to the record. When our legislature added the qualifying language, "to the suit", following the language, "opposite or interested party", as said by the Virginia Court of Appeals of its omission in its statute: "This language must have been chosen designedly." That the legislature intended as we have interpreted is demonstrated as well by the very fact that it speaks of those it has in mind as "obtaining a verdict, judgment or decision," well knowing that no one, not a party to a suit, could "obtain a verdict, judgment or decision therein". As said by the Virginia Supreme Court of Appeals in Atlantic Coast Realty Co. v. Robertson's Ex'r, supra, quoted approvingly by the same court in Ratliff v. Jewell, supra: "We should first rid our minds of all of the cases which discuss the character of interest which disqualifies a witness, for under the Virginia statute the interest of a witness is no longer a disqualification."

It is highly interesting to remind ourselves that this admonition by the Virginia Supreme Court of Appeals applies with equal force in New Mexico, since under our statute "interest of a witness is no longer a disqualification." 1941 Comp. § 20-106. Yet, it is by reason of interest alone that defendant seeks to have us construe the wife to be a party to this suit.

In an earlier Virginia case, Robertson's Ex'r v. Atlantic Coast Realty Co., 129 Va. 494, 499, 106 S.E. 521, the court quotes a portion of the revisor's note to section 6209 of the Virginia Code, set out above and construed in the decisions from that state cited, supra, taken from the Report of the Revisors made to the General Assembly at its session of 1918. Referring to several sections repealed with the adoption of section 6209, among them the one relating to survivorship, the Report of the Revisors states: "Most of the States still retain this exception, but in at least two States other than Virginia it has been abolished (*New Mexico* and Connecticut)." (Emphasis ours).

This observation seems to put our statute pertinent to the subject discussed in line with those of Virginia in a respect not heretofore noticed.

It is our conclusion that the corroborating testimony of the wife was properly received. Much of what is said in opposition to this conclusion, with truly greater propriety, might be addressed to the legislature as pointing the way for an amendment of the controlling statute, should it agree on the wisdom of the policy embraced in the opposing view as to what the statute should provide, rather than as an invitation to this court by forced construction to.

achieve the same end by virtually amending the statute here. In this connection we may with profit refer to a California statute touching upon the subject matter of this one and its construction by the courts of that state. It is section 1880 of the California Code of Civil Procedure, reading: "The following persons cannot be witnesses: * * * (3) Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

This statute has been given a literal construction from the very beginning. 11 Cal. Jur. 807, § 483; Id. 11A, 895, § 635; Blood v. Fairbanks, 50 Cal. 420; Moore v. Schofield, 96 Cal. 486, 31 P. 532; City Savings Bank v. Enos, 135 Cal. 167, 67 P. 52; Merriman v. Wickersham, 141 Cal. 567, 75 P. 180; Roncelli v. Fugazi, 44 Cal.App. 249, 186 P. 373; Cullinan v. McColgan, 87 Cal.App. 684, 263 P. 353; Panno v. Russo, 82 Cal.App.2d 408, 186 P.2d 452. In the early case of Blood v. Fairbanks, supra, it was sought to have a former partner who had sold his interest to his co-partner and, hence, was no longer interested testify in a suit by the latter against the administrator of a decedent for an accounting under a partido contract involving some sheep. He was not allowed to testify, the court saying: "It is said that Hewitt is not a party against an executor, and that he has no claim against the estate. But the statute does not merely exclude parties who have or are supposed to have an interest adverse to the estate of the decedent, but, by its terms, renders all nominal parties to the action incompetent."

In City Savings Bank v. Enos, supra, the defendant sought to exclude the testimony of a cashier and assistant cashier of a bank under the quoted statute in an action by the bank against him as administrator of a decedent. The court ruled against the contention. It said: "We cannot agree with appellant. The provision applies only to parties or assignors of parties, and Haslam was neither the one nor the other. If he was a stockholder, which it is claimed he was, that fact would make no difference, for interest no longer disqualifies under our law." [135 Cal. 167, 67 P. 55.]

And so, in the still later case of Roncelli v. Fugazi, supra, the court held the mere fact a plaintiff was suing in a representative capacity and had no personal interest in the result mattered not and did not relieve his testimony from the inhibition of the statute. The court in ruling as it did used language quite applicable to our own situation in the case at bar except in reverse order. Here it is sought to extend the statute to include others than parties

to the suit because interested. In the Roncelli case it was sought to limit application of the statute to a certain class of parties to the action because not parties in interest. The court said:

"While section 1880 of the Code of Civil Procedure has often received the consideration of the appellate courts of this state, the reports do not show it to have been previously involved in an inquiry to determine whether the word 'parties,' as therein used, is broad enough in meaning to apply to a party to the record *suing only in his representative capacity.* This question is purely one of interpretation. We can neither abridge nor extend the scope of the terms of the section, nor should we concern ourselves with the philosophy of the rule established by the section, or speculate as to the motives which impelled the Legislature to enact it, except it be in aid of the discovery of the real meaning of its items. *The very words of the statute must control.* Moore v. Schofield, 96 Cal. 486, 31 P. 532.

\* \* \* \* \* \*

"In framing the exceptions provided by section 1880 to the general enabling act (section 1879, Code of Civ.Proc.), the Legislature must have intended to use the word 'parties' in its usual and appropriate meaning in law (section 16, Code Civ. Proc.). If it had been intended to render the testimony of a party to the record, suing in his representative capacity, admissible under the circumstances stated in the statute, it would have been a very simple matter to have so declared in the statute itself, as was done in the Washington statute, where it is provided that the exclusion of the testimony of a party to the record 'shall not apply to parties of record who sue or defend in a representative or fiduciary capacity and who have no further interest in the action.' Since our statute of exclusion uses the word 'parties' in its broad generic sense, we do not deem it proper to restrict its meaning to smaller compass, thus confining its application to parties to the record suing in their individual capacities." (Emphasis ours.) [44 Cal. App. 249, 186 P. 375.]

In Cullinan v. McColgan, supra, the court said of this California statute: "Subdivision 3 of section 1880 of the Code of Civil Procedure has always been strictly and literally construed, and has never been extended to cover cases nor parties not within the express terms of the statute. Merriman v. Wickersham, 141 Cal. 567, 75 P. 180; City Savings Bank v. Enos, 135 Cal. 167, 67 P. 52; Paulson v. Stanley, 122 Cal. 655, 55 P. 605, 68 Am.St.Rep. 73; Booth v. Pendola, 88 Cal. 36, 23 P. 200, 25 P. 1101; Maguire v. Cunningham, 64 Cal.App. 536, 222 P. 838." [87 Cal.App. 684, 263 P. 359.]

In the late case of Panno v. Russo, supra, the court still adheres to the rule of literal construction of the statute. After quoting from Cullinan v. McColgan, cited next above, the court said: "The view expressed in the case just referred to, that subdivision 3 of section 1880 of the Code of Civil Procedure is not to be extended to cover cases or parties not within its express terms, has been followed in numerous cases and under varying factual situations. In Streeter v. Martinelli, 65 Cal.App.2d 65, 71, 149 P.2d 725, 729, in holding that the statute does not apply to actions seeking to recover property or establish title thereto as against an estate, it was said (quoting from Cal.Jur., vol. 11A, pp. 888, 889) : 'The statute is not extended by construction to apply to cases not within its terms, or to apply to all actions brought against an executor or administrator, although the reason for the rule might be as applicable to other cases as to the case of a money claim against the estate.'" [82 Cal.App.2d 408, 186 P.2d 455.]

The nearest approach on its facts from the standpoint of the witness tendered whose competency to testify was questioned is to be found in the case of Badover v. Guaranty Trust & Savings Bank, 186 Cal. 775, 200 P. 638, 640. There the wife was held not to be an incompetent witness in an action on a note constituting community property at a time prior to enactment of section 161a of the California Civil Code declaring the interests of husband and wife in community property to be "present, existing and equal." The case holds that Mrs. Badover, the wife, is not a party to the action within the statute. There is language in the opinion strongly intimating that if section 161a, Cal.Civ.Code, had been in effect, she would not have been permitted to testify, *not because deemed a party to the suit* under the statute, as she was held not to be, but under other language of the statute as a person "in whose behalf" the suit was prosecuted. The court said:

"Subdivision 3 of section 1880 has already been quoted in discussing the objection to Rapaport's evidence. It excludes 'parties or assignors of parties' to such an action as this. *Obviously Mrs. Badover is neither a party nor the assignor of a party to the action.* It also excludes 'persons in whose behalf' such an action is prosecuted. It is clear that appellant's claim must stand or fall upon the true meaning of these words as used in this statute. Is the wife, within the meaning of the statute, a person 'in whose behalf' an action is prosecuted against an executor or administrator by her husband upon a claim asserted by him alone against the estate of a deceased person, based upon a note alleged to have been given him by the deceased and constituting, in part at least, community property? (Emphasis added.)

\* \* \* \* \* \*

"It was substantially held in Uhlhorn v. Goodman, 84 Cal. 185, 23 P. 1114, that one not a party to an action against an executor on a claim against a deceased person was not a competent witness where he was in fact jointly interested with the plaintiff in the contract on which the claim was based. He was the actual owner in part of the claim, and to the extent of his interest the action might well be held to be 'on his behalf.' We are not disposed to question the correctness of the ruling in this case, and accept it as establishing that an action against an executor or administrator on a claim against a deceased person is one brought 'on behalf of' any person not a party to the action who, nevertheless, has an existing property right in the claim. It seems to us manifest, however, that these words cannot fairly be construed as including a person not a party who has no such present property right."

So much for the California decisions. There is still another statute we wish to consider in this connection. In our opinion in the case of Union Land & Grazing Co. v. Arce, supra, we quoted an Ontario Statute appearing as Ont.Rev.St. 1897, c. 73, § 10, on the subject under discussion. The statute was said to have been an existing one in Ontario in 1878, at the latest. It is almost word for word our 1941 Comp. § 20-205, L. 1880, c. 12, § 8, and the implication of our opinion in the Arce case is that we adopted it from Ontario in 1880 at a time when it read as follows: "In an action by or against the heirs, executors, administrators, or assigns of a deceased person, an opposite or interested party to the action shall not obtain a verdict, judgment, or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence."

The Ontario statute at some time between 1878 and 1914 was amended by simply deleting from the language "an opposite or interested party *to the action*," the last three words which we have just underscored. See Ont.Rev.St. 1914, c. 76, § 12. In other words, when the Legislative Assembly of Ontario felt it desirable, as a matter of policy, to have their statute interpreted as the opposing view now interprets ours, it removed by legislative enactment the language which as the statute stood barred such an interpretation. The reason for the amendment is, of course, obvious. It unquestionably was to have the statute interpreted as the opposite view would read ours with the deleted language still included. We are asked to remove this language by what would be judicial legislation, nothing more nor less.

 The meaning of a statute is to be ascertained primarily from its terms and where they are plain and unambiguous there is no room for construction. Hence,

the oft repeated maxim that "a statute means what it says." De Graftenreid v. Strong, 28 N.M. 91, 206 P. 694; Gonzales v. Sharp & Fellows Contracting Co., 51 N.M. 121, 179 P.2d 762; State v. Prince, 52 N.M. 15, 189 P.2d 993. It seems too plain for argument that the effort here made is to have us accomplish by judicial construction what in other states has been deemed a proper subject of legislative enactment. The questioned language of the statute before us is too plain and unambiguous to become a subject of construction. If a change such as that indicated be needed the legislature and not the courts is the place to go for it.

The cross-appeal prayed by the plaintiff and granted by the trial court is in effect a presentation of his grievances against the judgment of the court in failing to award him recovery in a greater amount than it does for moneys claimed to have been held in trust for him by the decedent, A. C. Hendricks, at the time of his death. He assigns some eighteen (18) separate errors, each directed at a refusal by the trial court to make a requested finding of fact or to adopt a tendered conclusion of law. For purposes of argument all are grouped under three points, the first of which is the rather all embracive one, reading: "The decedent, A. C. Hendricks, at the time of his death held cattle and moneys for the cross-appellant for which he is entitled to recover against defendant."

Under this broad and assertive point the plaintiff as cross-appellant argues assignments of error Nos. 1 to 10, claiming error in the trial court's refusal of specified findings of fact requested by him; also assignments of error Nos. 11 and 12 basing a claim of prejudice on the court's refusal of two requested conclusions of law. The findings of fact requested are largely a recital of plaintiff's theory of a trust relationship between decedent and plaintiff, his younger brother, the deposit with the former for safe keeping of the sum of $18,000.00, and of a settlement of such amount by an agreement between them under which decedent branded 50 head of cows and 1 bull in a brand owned by plaintiff and agreed to set aside to the latter 12 sections of land; of the subsequent intermingling of said cattle and their increase with decedent's herds and their disposal from time to time by decedent without accounting to plaintiff.

The requested findings also embraced plaintiff's theory as to certain other claims such as the sum of $1500.00 belonging to a sister, Birdie Smith, which it was said was placed with decedent who was directed to pay same over to plaintiff (cross-appellant) in satisfaction of a debt owed him by the sister which the requested findings state decedent never did; also the sum of $2500.-00 agreed to be paid plaintiff for his homestead conveyed to the decedent but never

paid over to him, as the requested finding goes on to say.

It will be noted by reference to the findings made that the trial court actually adopted some of the findings requested by plaintiff, as for instance, as to the $2500.00 claimed by reason of the homestead conveyance, as to a $506.09 book balance shown in plaintiff's favor, the shipment of certain cattle belonging to plaintiff, and for a portion of the salary claim. However, at the same time it found that the various claims asserted, so far as allowed were all debts, and except as recovery therefor was awarded, were each and all barred by the applicable statute of limitations.

We have carefully reviewed a rather extensive record and conclude that the findings made by the trial court are supported by substantial evidence and under well settled principles cannot be disturbed. They support the judgment rendered. Nor can we say that the court's action in refusing plaintiff's (cross-appellant's) requested findings discloses any unwarranted appraisal of the evidence before the court, or the lack of it. There was certainly little, if any, evidence upon which the trial court might have found a trust existed, in plaintiff's favor, especially when the rules respecting the degree of proof required to establish a trust are kept in mind. White v. Mayo, 35 N.M. 430, 299 P. 1068, 1069.

Nor is plaintiff (cross-appellant) aided by the effort to shift his theory to one of conversion as to the cattle by presenting certain requested findings of fact some six (6) weeks following the actual trial. A party will not be permitted to abandon the theory on which a case was tried and present a new one as the basis for relief in this court. Horton v. Atchison, T. & S. F. Ry. Co., 34 N.M. 594, 288 P. 1065. Indeed, the only grounds upon which plaintiff could actually invoke the jurisdiction of a court of equity in the first instance, as against confining himself to remedies in the probate court for proving claims against estates, was by virtue of allegations characterizing his suit as one to establish a trust. Cf. Dunham v. Siglin, 39 Or. 291, 64 P. 661; Whitney v. Fox, 166 U.S. 637, 17 S.Ct. 713, 41 L.Ed. 1145.

What we have said will also dispose of the two additional points argued in the brief of the cross-appellant (plaintiff). Except as recovery is awarded the claims are barred by the four year statute of limitations. 1941 Comp. § 27-104. The decedent who alone possessed knowledge of the transactions claimed to have been had with him, other than the plaintiff or his wife, is dead. The transactions relied on had their origin nearly a quarter of a century before decedent's death. Suit was not begun until after his death and his lips are forever sealed. The statute of limitations was made for just such cases.

■ The judgment of the trial court will be affirmed. Cost of the appeal will be equally divided between the parties.

It is so ordered.

LUJAN and COMPTON, JJ., concur.

McGHEE, Justice (dissenting in part).

I concur in the majority opinion except the part holding judgment may be recovered on a community property claim on the testimony of a husband and his wife.

In my opinion the purpose of the statute requiring corroboration was to prevent the collection of bogus claims from an estate, when the lips of one of the parties to the claimed transaction are sealed. It is a cardinal rule of statutory construction that the intention of the legislature in passing a statute is the primary and controlling consideration in determining its proper construction. State v. Southern Pac. Co., 34 N.M. 306, 281 P. 29.

In view of the purpose of the statute and the well known temptation that exists in the minds of evilly disposed persons to make false claims, I do not believe the interpretation the majority gives to the statute is justified. So construed the legislature is thwarted in its efforts to avoid the evils existing in this respect.

I agree that statutes limiting the right of persons to testify should ordinarily receive a strict construction. Such a rule, however, should not be followed when absurdity would result or the legislature be frustrated in its effort to cure a public evil. State v. Southern Pac. Co., supra.

My objection to the holding that the wife is a competent witness to corroborate her husband on a claim which is the property of the community goes deeper than mere statutory construction upon which the majority lay such stress. It is that the wife is actually a party, through her agent and representative, her husband, as the statutory head of the community, although her name does not appear in the caption of the complaint.

It has long been the law of this state that, save for certain exceptions, an action must be brought in the name of the real party in interest. District Court Rule 17 (a). The wife has a present, vested, one-half interest in the community property, in every respect equal to that of the husband and he is her agent in handling the affairs of their community. Dillard v. New Mexico State Tax Commission, 53 N.M. 12, 201 P.2d 345. The claim here involved is community property and absent the law that the husband has the management and control of the personal property, and is its agent, the wife would have been a necessary party to this action. Sec. 65-403, 1941 Compilation; Levy v. Kalabich, 35 N.M. 282, 295 P. 296.

It was said by the Supreme Court of the United States in Poe v. Seaborn, 282 U.S.

101, 51 S.Ct. 58, 59, 75 L.Ed. 239, in construing community statutes of Washington which to all intents and purposes are the same as ours:

'"* * * The community must act through an agent. This Court has said with respect to the community property system (Warburton v. White, 176 U.S. 494, 20 S. Ct. 404, 408, 44 L.Ed. 555) that 'property acquired during marriage with community funds became an acquet of the community and not the sole property of the one in whose name the property was bought, although by the law existing at the time the husband was given the management, control, and power of sale of such property. This right being vested in him, not because he was the exclusive owner, but because by law he was created the agent of the community.'

"In that case, it was held that such agency of the husband was neither a contract nor a property right vested in him, and that it was competent to the legislature which created the relation to alter it, to confer the agency on the wife alone, or to confer a joint agency on both spouses, if it saw fit—all without infringing any property right of the husband. See, also, Arnett v. Reade, 220 U.S. 311, at page 319, 31 S.Ct. 425, 55 L.Ed. 477.

"* * * The obligations of the husband as agent of the community are no less real because the policy of the State limits the wife's right to call him to account in a court. * * * The law's investiture of the husband with broad powers, by no means negatives the wife's present interest as a co-owner."

After quoting the above from Poe v. Seaborn, except a portion omitted for brevity, this court said in the Dillard case, supra: "It is thus made plain that the vested interest of the wife is in no manner affected by the husband's agency for the community; and we adopt this holding as applicable to our community property laws. The legislature has given this control to the husband, and the legislature can take it away. In fact the legislature has provided that under certain conditions the wife may be substituted for the husband as the head of the community with all the authority given him by law. Sec. 65-405. N.M.Sts. 1941." [201 P.2d 350.]

Levy v. Kalabich, supra, was an action to enjoin a judicial sale of real estate under a decree foreclosing a mechanic's lien in favor of A. L. Levy against Milo Kalabich. An injunction was awarded upon the intervention of Edith Kalabich, wife of Milo, on the sole ground that the real estate was community property, and that the intervening wife had not been made a party defendant in the foreclosure suit. The trial court held that the decree was void for lack of jurisdiction. This court, speaking through Mr. Justice Watson, said that the

statute giving the husband management and control of the community property was only declaratory of the law in this state as it heretofore existed. It then quoted from Beals v. Ares, 25 N.M. 459, 185 P. 780, that our community property laws were modeled after the civil law of Spain and Mexico, and that we should look to that law for definitions and interpretations, and stated that construed as Beals v. Ares directed, the husband's "management and control" embraced the right and duty to represent the community in its litigation, and that the wife was not, therefore, a necessary party to the foreclosure suit.

The community is the owner of the claim involved here and, as I view the matter, the husband brought the action for himself and as agent of the wife by authority of the legislature, so that to all intents and purposes she is a party to the action. The undoubted purpose of the statute was to avoid false claims and perjury in support thereof, so it was said that a party to the action could not recover against an estate unless corroborated. Surely it is not the name used as a party plaintiff that tempts the perjury, but the interest of the one prosecuting such claim to get a share of the estate. Under the majority holding one represented in the action by her agent is a competent corroborating witness, but the one who filed the case for himself and wife is not competent to make proof without corroboration. On the other hand, if the wife be named the head of the community, then the tables may be turned. She files the claim and the husband furnishes the corroborating testimony. If an action is filed by the husband as head of the community and the wife furnishes the corroborating testimony, but before the case is decided or the judgment signed, the wife is substituted as head of the community, I assume the claim would fail for lack of corroboration.

I believe it is a common practice in New Mexico for the owners of unpaid accounts to assign them to others for suit in the name of the assignee. Under the majority opinion the assignee will now be able to file a claim against the estate of a deceased person and the beneficial owners may then furnish the necessary evidence in support thereof, and thus be able to circumvent the statute here involved.

I assume the heretofore universally accepted adage that "A rose is as sweet by any other name" must no longer be recognized in judicial proceedings in New Mexico. It is likely that modesty prevents a statement in the opinion by the distinguished members composing the majority that they have given the bench and bar of New Mexico the new legal maxim, "The name is the thing", so I so summarize their holding on the disputed question and publish it to the world.

Such a result does not, in my opinion, add up to good law or carry out the legislative intent. The majority holding otherwise,

I dissent.

BRICE, Chief Justice, (dissenting).

I concur in the dissenting opinion of Mr. Justice McGHEE.

The opinion of the court and the supporting cases cited by Mr. Justice Sadler can have no application to the wife in any suit or action where community property is involved. The wife has a vested interest in the community property, McDonald v. Senn, 53 N.M. 198, 204 P.2d 990, 10 A.L.R. 2d 966, and for constitutional reasons she cannot be deprived of her vested property rights without due process of law. To constitute due process she must be a party to any suit that involves those vested rights; otherwise no judgment or decree will bind her or her interest in such property. That she and her interest in community property are bound by a judgment or decree of the district court against the husband alone was held by this court in Levy v. Kalabich, 35 N.M. 282, 295 P. 296. If she is not a party to this action through representation by her husband, then the judgment or decree is void as to her rights. She is necessarily a party to the suit and her testimony is not corroboration in the statutory sense.